UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **BLB AVIATION SOUTH CAROLINA, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 09-66-RET-DLD** |
| **JET LINX AVIATION CORPORATION AND JAMIE WALKER** | |

## MAGISTRATE JUDGE'S REPORT

This action arises out of a dispute over defendants' performance under an airplane dry lease agreement between the parties. Plaintiff, BLB Aviation South Carolina, LLC (BLB), filed its complaint in this court against Jet Linx Aviation Corporation (Jet Linx) and Jamie Walker (Walker), Jet Linx's CEO, alleging diversity jurisdiction based on 28 U.S.C. §1332.[1] Defendants immediately filed a motion to dismiss or transfer case to the United States District Court for the District of Nebraska (rec. doc. 5). The motion to dismiss or transfer is opposed (rec. doc. 10), and has been referred to the undersigned for a report and recommendation.

### Factual Background

Plaintiff BLB is an aviation company based in Baton Rouge, Louisiana, which owns several airplanes that are often used for charter flight services (rec. doc. 1). On or about

---

[1] BLB is a limited liability company organized and existing under the laws of South Carolina, with its principal place of business in Baton Rouge, Louisiana. BLB has two members, Barry L. Bellue, Sr. and Barry L. Bellue, Jr., both of which are citizens of Louisiana (rec. doc. 1) Thus, pursuant to 28 U.S.C. §1332, BLB is a citizen of Louisiana. Jet Linx is properly identified as a limited liability company. Jet Linx's sole member is Jet Linx Management Company L.L.C. Jet Linx Management Company, L.L.C.'s members are JLA Walker, L.L.C.; John D. Carreker, a citizen of Dallas, Texas; Brenton Carreker, a citizen of Dallas, Texas; Henry Coffeen, a citizen of Seguin, Texas. JLA Walker, L.L.C.'s members are Dennis Walker and Jamie Walker, both citizens of Omaha, Nebraska (rec. doc. 18). Jamie Walker is a citizen of Nebraska (rec. doc. 1).

March 29, 2007, plaintiff was contacted via written correspondence by defendant Walker, as CEO/President of defendant Jet Linx, regarding a possible "dry" lease or charter of one of plaintiff's airplanes for use in connection with the Jet Linx charter business located in Omaha, Nebraska.[2]  Plaintiff first suggested that Jet Linx use one of its existing airplanes in its charter operations; however, Jet Linx proposed that plaintiff purchase another airplane for dry lease to Jet Linx.

In June 2007, plaintiff, working through an airplane broker, located a Mitsubishi Diamond Jet MU 300 airplane in Little Rock, Arkansas.  Thereafter, Tony Boatwright, head of maintenance for Jet Linx, and Lee Bellue, member of BLB, met in Little Rock to inspect the airplane.  Jet Linx indicated that the airplane was acceptable, with the sole stipulation that plaintiff invest in a new interior so that the airplane would be suitable for Jet Linx's clients.

On August 1, 2007, plaintiff and Jet Linx executed a "Dry Lease Agreement" for the airplane (rec. docs. 1 and 5-2).[3]  The agreement purportedly required Jet Linx to make a minimum monthly payment to plaintiff of $47,100 and to pay for all other costs associated with the airplane during the term of the lease, including insurance and taxes, with the exception of maintenance costs. The income under the lease agreement was to be determined by the number of flight hours, and Jet Linx was solely responsible for leasing

---

[2] A dry lease generally is a leasing arrangement whereby an aircraft financing entity (lessor) provides an aircraft without insurance, crew, ground staff, supporting equipment, maintenance, etc. Dry lease is typically utilized by leasing companies and banks, requiring the lessee to put the aircraft on its own Air Operator Certificate and provide aircraft registration. "Airplane lease." Wikipedia. 2009, Wikimedia Foundation, Inc., 9 November 2009, http://en.wikipedia.org/wiki/Aircraft_lease.

[3] Neither party indicates how or where the lease agreement was executed.

and promoting the airplane.[4]  On or about August 12, 2007, plaintiff purchased the airplane for $1,225,000 and invested the additional money in making the upgrades to the interior requested by Jet Linx.  After the upgrades were finished, plaintiff had the airplane delivered to Jet Linx in Omaha, Nebraska.

Before Jet Linx could use the airplane in its charter operations, it had to address several maintenance issues and to secure the FAA's approval for its use.  Apparently, Jet Linx experienced some difficulty with the maintenance and licencing of the airplane, which resulted in delayed or nonpayment of monthly lease installments to plaintiff and unexpected/unnecessary maintenance costs at the outset of the business relationship.  Throughout the business relationship, plaintiff contends it was continuously surprised by high monthly bills for maintenance performed by Jet Linx employees or by third-party airplane mechanics.  Although Jet Linx allegedly agreed to notify plaintiff if maintenance costs exceeded $5,000, it failed to do so and, instead, deducted the maintenance costs from plaintiff's guaranteed monthly lease payments.  Plaintiff was therefore unable to dispute the costs or attempt to have the work done at a reduced cost elsewhere.

As a result of the unexpected maintenance costs and unpaid/underpaid guaranteed monthly lease payments, plaintiff grew increasingly dissatisfied with its relationship with Jet Linx and ultimately filed suit against Jet Linx and Walker on February 4, 2009 (rec. doc. 1). Plaintiff alleges that it relied on Jet Linx's representations that it would pay plaintiff a guaranteed monthly minimum in making the decision to purchase the plane and lease it to Jet Linx. Plaintiff brought claims against Jet Linx and Walker for violations of the Louisiana

---

[4] Although the parties reference the lease agreement in their filings, a copy of the lease agreement was not provided to the court.

Blue Sky Laws, fraudulent misrepresentation, negligent misrepresentation, rescission based on error/fraud, and breach of contract. Id.   Plaintiff seeks rescission of the lease agreement, the balance of all amounts owed under the lease, reimbursement for the maintenance costs incurred without proper notice to plaintiff, and attorney's fees.

Defendants thereafter filed a motion to dismiss based on improper venue or motion to transfer this case to the United States District Court for the District of Nebraska (rec. doc. 5), which is before the court for a report and recommendation.

### **Arguments of the Parties**

Defendants move to dismiss this matter arguing that venue is not proper in this judicial district because none of the defendants reside in Baton Rouge, Louisiana, the substantial events and property at issue are not located in Baton Rouge, Louisiana, and defendants are not subject to personal jurisdiction in Baton Rouge, Louisiana (rec. doc. 5). Defendants further argue that if the court is not inclined to dismiss this matter, it should be transferred to the United States District Court for the District of Nebraska for the convenience of the parties and witnesses.

Plaintiff responds by arguing that venue is proper in this court because a substantial part of the events giving rise to the claim occurred in Baton Rouge, Louisiana, and, to the extent personal jurisdiction is relevant to the venue argument, which plaintiff disputes, both defendants are subject to specific and general personal jurisdiction in Baton Rouge, Louisiana (rec. doc. 10).   With respect to the motion to transfer, plaintiff argues that defendants have not met their burden of proving "good cause" for a transfer.

**Law Governing Venue and Transfer**

A district court has the authority to transfer a case in the interest of justice to another district in which the action might have been brought, regardless of whether venue exists in the original forum. See 28 U.S.C. §§ 1404(a) and §1406(a). If venue is proper in the original forum, the transfer may be made pursuant to Section 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." If venue is improper in the original forum, the transfer must be made under Section 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

A transfer is appropriate under either Section 1404(a) or Section 1406(a) even if personal jurisdiction is lacking. See *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Aguacate Consolidated Mines, Inc., of Costa Rica v. Deeprock, Inc.*, 533 F.2d 523 (5th Cir. 1978); *Koehring Co. v. Hyde Construction Co.*, 324 F.2d 295 (5th Cir. 1964). Since the court ultimately would have to examine whether or not it should transfer the case regardless of whether venue is proper in the Middle District of Louisiana, it begins by examining the issue of transfer.

Motion to Transfer

Assuming without deciding that venue in the United States District Court for the Middle District of Louisiana is proper, the court now considers whether this action should be transferred to another judicial district under 28 U.S.C. §1404(a). The underlying premise of Section 1404(a) is that courts should prevent plaintiffs from abusing their

privilege under Section 1391 by subjecting defendants to venues that are inconvenient under the terms of Section 1404(a). *In re Volkswagen of America, Inc.*, 545 F.3d 304, 313 (5th Cir. 2008).

The parties agree that the District of Nebraska is a district in which the action initially could have been brought (rec. doc. 10, pp. 7-8). Thus, the court must consider whether transferring the case to the District of Nebraska serves the convenience of the parties and witnesses and is in the interest of justice. *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008); *Entex Production, Inc. v. Mid Continent Cas. Co.*, 2008 WL 191650 at *2. The Fifth Circuit in *In re Volkswagen of America, Inc.*, recently set forth the standard that district courts in this circuit should apply in deciding a motion to transfer: "Section 1404(a) venue transfers may be granted 'upon a lesser showing of inconvenience' than *forum non conveniens* dismissals" and "the burden that a moving party must meet to justify a venue transfer is less demanding than that a moving party must meet to warrant a *forum non conveniens* dismissal." *Digital-Vending Services, Intern., L.L.C. v. University of Phoenix, Inc.*, 2009 WL 3161361 (E.D. Tex. 2009), citing *In re Volkswagen*, 545 F.3d 304, 314 (5th Cir. 2008) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955). The court further held that the moving party bears the burden of showing "good cause," which the court explained is satisfied when "the movant demonstrates that the transferee venue is clearly more convenient." *In re Volkswagen*, at 315.

The Fifth Circuit has adopted the private and public interest factors for the determination of whether a Section 1404(a) venue transfer is for the convenience of the parties and witnesses and is in the interest of justice. Id. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory

process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir.2004)(citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." Id. The court will address the private and public factors individually.

*Private Factors:*

(1) *The relative ease of access to sources of proof*

In addressing this factor, the court in *In re Volkswagen* noted that the fact that access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous and cannot be read out of the § 1404(a) analysis. *In re Volkswagen*, 545 F.3d at 316. As in most cases, the records and documents of plaintiff and defendants are located where the parties are located (in this case BLB -Baton Rouge and Jet Linx/Walker - Omaha); therefore, one of the parties will be forced to transport its records and documents to another jurisdiction. Plaintiff has failed to identify which of its "books and records" and the quantity of books and records would be relevant to the issues in this matter. Plaintiff contends that documents are routinely transported in the course of litigation; therefore, Jet Linx would not be burdened by being required to transport its books and records to Baton Rouge, Louisiana (rec. doc. 10). Based on the facts that the plane is located in Nebraska and the maintenance logs

detailing work (necessary or unnecessary) performed on the airplane, the flight logs and promotional materials, the licensing information, and the financial information regarding the leasing of the airplane are all located in Nebraska, it appears that Jet Linx is in possession of more of the information relevant to the issues in this case, and it would be more difficult for Jet Linx to transport its books and records from Omaha to Baton Rouge. Thus, this factor weighs in favor of transfer.

(2) *The availability of compulsory process to secure the attendance of witnesses*

Federal Rule of Civil Procedure 45(b)(2) governs the places where a subpoena issued by a court of the United States may be served. A court's subpoena power is subject to Rule 45(c) (3)(A)(ii), which protects nonparty witnesses who work or reside more than 100 miles from the courthouse. See In re Volkswagen, 545 F.3d at 316. Similar to the sources of proof, both parties contend that their witnesses are located in their respective jurisdictions. Jet Linx advises that some of its necessary witnesses (pilots and mechanics) are no longer employed by Jet Linx but still reside in Nebraska. As a result, neither Jet Linx nor a subpoena can compel their attendance at trial in Baton Rouge, but the witnesses would be subject to the subpoena power of the Nebraska court. Plaintiff does not identify the number of witnesses it has to testify about the "issues surrounding the formation of the contract," but indicates that these witnesses are located in Baton Rouge.

Additionally, neither party has indicated where the majority of the negotiations for the lease agreement (other than telephone and email communication) took place or where the lease was ultimately executed, so the court is unable to determine where the bulk of the witnesses with information on these issues would be located. Since most of the events that resulted in the demise of the relationship between the parties occurred in Nebraska

(maintenance, promotion, leasing, and payment history), it is probable that Jet Linx will have more witnesses with information relevant to the issues in this case, and the witnesses who are no longer employed by Jet Linx would only be subject to the subpoena power of the Nebraska court. Thus, this factor weighs in favor of transfer.

      (3) *The cost of attendance for willing witnesses*

The Fifth Circuit has established a threshold of 100 miles when giving substantial weight to this factor. See *In re Volkswagen*, 371 F.3d at 204-05 ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled."). The court in *In re Volkswagen* reasoned that "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." Id.

Jet Linx suggests that because it has multiple current and former employees and representatives who may be required to testify on the numerous issues raised by plaintiffs (leasing, maintenance, licensing, promotion), it will be more difficult for Jet Linx to transport witnesses to trial in Louisiana or to reschedule witness testimony on short notice, if necessary. As with the previous factors, this factor also turns on the fact that the performance of the terms of the lease agreement was centered in Nebraska rather than Louisiana. It appears that Jet Linx will have more witnesses with information relevant to the issues in this matter; therefore, it will be more expensive for it to transport its witnesses and make them available for trial. Thus, this factor also weighs in favor of transfer.

*Public Factors:*

(1) *The administrative difficulties flowing from court congestion*

The parties offer no evidence with respect to this factor, and this court has no knowledge of the flow of the docket in the District of Nebraska. Thus, this factor is neutral.

(2) *The local interest in having localized interests decided at home*

Plaintiff is correct in suggesting that the State of Louisiana has a strong interest in regulating companies that conduct business in Louisiana and cause damage in Louisiana. Thus, this factor weighs against transfer.

(3) *The familiarity of the forum with the law that will govern the case* and (4) *The avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law*

Both parties acknowledge that the lease agreement provides that it will be governed by Nebraska law. Plaintiff suggests that this does not automatically result in the application of Nebraska law as the Nebraska court would have to apply the "law that would have been applied in the Louisiana court under the conflict of laws rules of Louisiana" (rec. doc. 10). It is well-established, however, that where the parties stipulate to the state law governing the contract, Louisiana choice-of-law principles require that the stipulation be given effect, unless there is statutory or jurisprudential law to the contrary or strong public policy considerations justifying the refusal to honor the contract as written. See La. Civ. Code art. 3450; *Wooley v. Lucksinger*, 14 So.3d 311, 473 (La. App. 1 Cir. 2008); *Mobil Exploration & Production U.S. Inc. v. Certain Underwriters Subscribing to cover Note 95-3317(A)*, 837 So.2d 11, 38-39 (La. App. 1 Cir. 2002). A choice-of-law provision in a contract is presumed valid until it is proved invalid. The party seeking to prove such a provision is invalid bears the burden of proof. Id.

Plaintiff has not indicated that the choice of law provision is invalid in any way; therefore, it is likely that Nebraska law will govern the interpretation of the contract regardless of whether the trial takes place in Baton Rouge, Louisiana, or Omaha, Nebraska. Although this court is certainly capable of deciphering Nebraska contract law, the District of Nebraska would be more familiar with the nuances of Nebraska law. Thus, these factors weigh in favor of transfer.

Other than the initial written contact and subsequent correspondence forwarded by defendants to plaintiff in Baton Rouge, Louisiana, it appears that none of the events that gave rise to this dispute took place in Louisiana. The inspection took place in Little Rock, Arkansas, and all subsequent events from licensing/promotion/maintenance of the plane to payment under the contract took place in Omaha, Nebraska, where Jet Linx and Walker are located. Defendants have offered sufficient evidence to establish "good cause" for transferring this case to the United States District Court for the District of Nebraska. Thus, based on the facts presented in this case and the standard set forth in *In re Volkswagen* for transfers under Section 1404(a), a transfer to the proposed forum of the United States District Court for the District of Nebraska would be more convenient for the parties and witnesses.

As previously noted, the district court has the authority to transfer this case pursuant to Section 1406(a), even if venue is not proper in this judicial district. The evidence set forth above weighs in favor of transferring this case to the District Court of Nebraska; therefore, in the event venue is not proper in this judicial district, the court would exercise its discretion under Section 1406(a) and recommend that this matter be transferred to the

District Court of Nebraska.  Thus, regardless of whether venue is proper in the Middle District of Louisiana, the court recommends that the matter be transferred.

**Recommendation**

**IT IS RECOMMENDED** that defendants' motion to dismiss or transfer (rec. doc. 5) should be **DENIED IN PART AND GRANTED IN PART,** in that the motion to dismiss should be **DENIED**, and the motion to transfer be **GRANTED**, and this matter be **TRANSFERRED** to the **United States District Court for the District of Nebraska.**

Signed in Baton Rouge, Louisiana, on November 16, 2009.

MAGISTRATE JUDGE DOCIA L. DALBY

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **BLB AVIATION SOUTH CAROLINA, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 09-66-RET-DLD** |
| **JET LINX AVIATION CORPORATION AND JAMIE WALKER** | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on November 16, 2009.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**